James F. HARRIGAN, Plaintiff,

v.

NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant.

No. 87 Civ. 0263 (DNE).

United States District Court, S.D. New York.

Sept. 6, 1988.

Ben–Veniste & Shernoff (Richard Ben–Veniste, of counsel), Washington, D.C., for plaintiff.

Lane & Mittendorf (William E. Kelly, of counsel), New York City, for defendant.

## ORDER

EDELSTEIN, District Judge:

Plaintiff, asserting diversity and federal question jurisdiction[1], brought suit seeking to recover monies allegedly owing under a long term disability insurance policy.

Plaintiff also seeks to recover attorney's fees and a minimum of one million dollars in punitive damages. This court conducted a bench trial and reserved ruling pending additional submissions by the parties. Defendant has moved to strike certain testimony and exhibits admitted at trial. The motion to strike is denied. Based on the evidence as admitted, the court finds for the defendant.

## MOTION TO STRIKE

### Dr. Kenneth Wexler

▪ Plaintiff's exhibit 23, Dr. Wexler's letter dated March 27, 1988, contains the assertion that plaintiff complained of headaches in April 1985. Defendant argues that the letter is inadmissible hearsay. The letter constitutes a memorialization of a statement of a then existing mental, emotional, or physical condition. *See* Fed.R. Evid. 803(3). Accordingly, defendant's motion to strike exhibit 23 is denied. Although this court deems the letter admissible, its variance with defendant's exhibit Q, the delay in the preparation of the letter, and the circumstances surrounding its preparation are relevant to the question of the weight properly afforded this evidence. These factors have been duly considered.

▪ Defendant also moves to strike plaintiff's exhibit 4, Dr. Wexler's office record regarding Mr. Harrigan. That exhibit was admitted into evidence as a business record pursuant to Fed.R.Evid. 803(6). Defendant argues that a notation of headaches would fall outside the scope of records appropriately taken by an optometrist. Clearly, complaints of headaches are relevant to the practice of optometry and are appropriately noted in business records.[2] Accordingly, defendant's motion to strike is denied.

---

1. Defendant does not dispute this court's jurisdiction over the instant case nor does it question venue. Defendant does, however, contest plaintiff's assertion that his alleged right to recover is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* Whereas this court finds that plaintiff has not proven he was disabled at the relevant time, the question of whether the instant case is governed by ERISA or entirely by state law is ultimately of no moment.

2. Further, the statement incorporated in the record would fall within the purview of the hearsay exception for statements made for purposes of medical treatment or diagnosis. *See* Fed.R.Evid. 803(4). Although Dr. Wexler is not a medical doctor but rather a doctor of optometry, Rule 803(4) would apparently still be applicable. *Cf. id.* advisory committee note ("Statements to hospital attendants ambulance drivers, or even members of the family might be included").

**Philip Castrovinci**

Defendant contends that portions of Mr. Castrovinci's testimony must be stricken as being hearsay and the product of leading questioning. During trial, defendant objected that the witness' testimony that Mr. Harrigan had complained of headaches was inadmissible. The court reserved ruling on the objection. At this time, it appears to the court that the statement in question is admissible as a present sense impression or a statement of a then existing physical state. *See* Fed.R.Evid. 803(1) and (3).

The testimony in question was clearly the result of a leading question. Defense counsel, however, never objected to the question, *see* transcript at 10, and plaintiff's counsel was thus not afforded an opportunity to rephrase the question. For purposes of this case, however, it is ultimately immaterial whether or not the court orders that Mr. Castrovinci's testimony regarding the headaches be stricken. Based on the witness' demeanor and the totality of circumstances surrounding Mr. Castrovinci's testimony, this court affords no weight at all to this portion of the direct testimony.

**Dr. Saran Rosner**

Defendant moves to strike those portions of Dr. Saran's testimony and plaintiff's exhibit 10 related to the medical history given to Dr. Saran on October 20, 1985. Defendant argues the information in question is unreliable, self-serving, hearsay. Plaintiff counters that he and his family would hardly make misstatements to the doctor who was to perform the craniotomy on the plaintiff only two days later.

Whereas the statements in question were "reasonably pertinent to diagnosis or treatment," they fall within the scope of Fed.R. Evid. 803(4). Accordingly, defendant's motion to strike is denied.

Defendant has also moved to strike other exhibits and testimony, *see* Def.Memo. at 15–17, on the ground that they are self-serving. The fact that the statements may be self-serving is relevant to determining the appropriate weight to be afforded the evidence. It is not, however, a ground for exclusion. Defendant, arguing that "head-aches, as a general rule, do not make a person totally disabled," also seeks to strike all evidence of headaches occurring prior to August 9, 1985. Def.Memo. at 10 n. 5. It is true that headaches, in and of themselves, need not result in disability. However, evidence in question, although not dispositive of the question of disability, is certainly relevant to this case. Accordingly, the application to strike evidence is denied.

### FINDINGS OF FACT

James F. Harrigan is a citizen of the State of Maryland, residing at 3805 Primrose Drive, Waldorf, Maryland.

New England Mutual Life Insurance Company ("New England Mutual") is an insurance company organized and existing under the laws of the Commonwealth of Massachusetts and it is authorized to conduct the business of insurance in the State of New York.

Plaintiff, was employed with Brunschwig & Fils, Inc. from February 1, 1979 until August 9, 1985.

Brunschwig, located in White Plains, New York, is a seller of high quality imported fabrics.

Plaintiff's job was to develop and program a computer system for Brunschwig's business. Plaintiff managed the data processing department, which included supervising the people in the department, hiring and firing employees, and reviewing their performance. Additionally, he was responsible for running the company's computers, including supervising operations, supervising purchases of equipment along with Mr. Gaffney, and designing, writing and implementing all software for programming the company's computers, including programs for inventory control, purchases, sales, accounts payable and receivable and the like. Plaintiff had several employees under his direct supervision.

As one of the benefits of his employment, plaintiff was covered by Brunschwig's group long term disability policy with defendant New England Mutual Life Insurance Co., Policy No. GLT–13493.

Under the Policy, if a Brunschwig employee becomes "totally disabled," as defined therein, he is entitled to monthly benefits (following a 180–day waiting period after the onset of the disability) for the duration of the disability until age 65.

The amount of the monthly benefit is a fixed percentage of the employee's regular monthly earnings, subject to certain reductions, such as receipt of Social Security disability benefits, in the event of total disability.

The Policy's definition of "total disability" is bifurcated. During the 180–day waiting period and the 24 months immediately thereafter, a covered individual is deemed "totally disabled" if an accidental injury or sickness prevents him from "performing the material duties of his occupation." Thereafter, he is "totally disabled" if the injury or sickness prevents him from "engaging in any occupation or employment for wage or profit for which he is or becomes qualified." Defendant concedes that plaintiff has been totally disabled within the meaning of the policy since October 17, 1985.

The matter in controversy in the instant case exceeds the sum of $10,000 exclusive of interest and costs.

On January 8, 1985, plaintiff whose hobby was flying small planes, successfully passed a required medical examination in order to continue his status as a licensed pilot.

On July 6, 1985, plaintiff, believing he had hurt his neck on an amusement park ride went to a chiropractor. Plaintiff did not indicate to the chiropractor that he was experiencing headaches.

On Monday, July 15, 1985, Mr. Harrigan convened a meeting of Mr. Gaffney, Mr. Hunnewell and Mr. Castrovinci, fellow Brunschwig employees, in which he announced his resignation from Brunschwig effective August 9, 1985. In doing so, he stated that he did not want the responsibility of running the computer department anymore.

Plaintiff's last date at work was August 9, 1985, as he announced it would be at the July 15, 1985 luncheon.

Coverage under Policy GLT–13492 terminated on plaintiff's last day of work.

Plaintiff worked regularly until the date of his voluntary resignation from his employment at Brunschwig on August 9, 1985, and without any complaint of illness to his employer.

Plaintiff stated that he did not wish to be burdened with the task of rebuilding the computer department and training new personnel and this was a contributing factor to his decision to voluntarily resign.

The changes in the computer department's staff immediately prior to plaintiff's resignation were contributing factors in his decision to resign.

Plaintiff had differences with upper management over priorities in the data processing department which were a contributing factor in his decision to resign.

The relocation of Brunschwig's home office operation to Westchester County from New York City in 1984 led the Harrigan family to move from Long Island to Mahopac, New York; and since they had few ties to the new community, the relocation was a contributing factor to plaintiff's decision to resign.

Plaintiff had discussed resigning from Brunschwig on prior occasions and had tendered his resignation on at least one other occasion.

On July 16, 1985, the day after plaintiff announced his resignation, plaintiff's superior engaged plaintiff in a lengthy conversation in the course of which plaintiff said that he had plenty of job opportunities in the Washington, D.C., area where his daughter was going on to college; that he would never be without a job; that he was looking for new, challenging opportunities.

During the week of August 5, 1985, Brunschwig's personnel manager held his customary exit interview with plaintiff and, in discussing again the reasons for his resignation, plaintiff reiterated his desire to relocate away from the New York area and again mentioned the Washington area;

plaintiff mentioned that he was frustrated with the direction Brunschwig was taking with data processing; he discussed his "love-hate" relationship with his superior, James Gaffney, and he mentioned that he objected to Gaffney "running" the department; plaintiff stated that he had been in the job long enough, that one could get stale if in a job too long; plaintiff indicated that he had an outside source of income from a project in Massapequa; and plaintiff chose not to convert his group insurance coverage to individual coverage.

Plaintiff received regular pay raises during his tenure at Brunschwig.

Plaintiff was offered another position at Brunschwig, after he announced his resignation, because of his superior skills.

■ Neither plaintiff nor his wife notified Brunschwig in the period from August 9, 1985 to October 17, 1985, that it was a mistake for plaintiff to have resigned; nor did they notify Brunschwig during that period that plaintiff was suffering from any illness, impairment or disability.

On October 16, 1985, plaintiff underwent testing which revealed, for the first time, a tumor in the left frontal temporal portion of his brain and, on October 17, 1985, the presence of the tumor was communicated to plaintiff and his wife. The plaintiff was admitted to Phelps Memorial Hospital, and thereafter, plaintiff underwent two operations to remove the tumor. The tumor had been present for a considerable period of time before its discovery. At the time of the admission on October 17, 1985, plaintiff's wife reported that plaintiff had been taking medication for four days and that he had pain or discomfort for two months.

By letter dated July 21, 1986, New England Mutual denied plaintiff's claim for benefits under Policy GLT-13493 on the ground, *inter alia*, that plaintiff was not totally disabled at the time his resignation became effective on August 9, 1985.

None of the physicians who testified at trial, including plaintiff's experts, Bernard Stopak, and Saran Rosner, defendant's associate medical director, Perry Norton, and Albert England, a neurologist called by defendant, disputed that plaintiff's tumor probably existed for a substantial period of time before it was discovered. Although these physicians differed in their opinions about the date of plaintiff's total disability, the differences were based upon their acceptance of signs and symptoms which they were asked to assume.

Although this court accepts the experts' guidance on the nature of the tumor, and those symptoms and signs associated with such tumors, the doctors did not observe the plaintiff during the period he was with Brunschwig.

Based upon the evidence, plaintiff's signs and symptoms, notably headaches, did not occur until October of 1985 in sufficient degree to disable him totally.

The above constitutes the court's findings of fact.

## CONCLUSIONS OF LAW

This court has jurisdiction over the instant action and venue is proper in this district. Although the tumor was present during the period of time in which Mr. Harrigan was in the employ of Brunschwig, that fact does not necessitate a finding that the plaintiff was disabled as that term is defined in New England Mutual Policy GLT-13493. Up until the time plaintiff left Brunschwig, the signs and symptoms associated with the tumor did not prevent the plaintiff from performing the requirements of his job. Indeed, he was an exemplary employee. As plaintiff has not demonstrated he was disabled at the relevant time, judgment is granted to the defendant.

SO ORDERED.